IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIANE DURPETTI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 22 C 458 |
| ) | |
| MENARD, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Diane Durpetti has sued Menard, Inc. (Menards), alleging that it negligently caused an injury she suffered when she tripped and fell over a product display in a Menards store located in Batavia, Illinois on May 17, 2020. Durpetti filed suit in state court in Kane County, and Menards removed the case to federal court based on diversity of citizenship. It has now moved to exclude the testimony of an expert witness offered by Durpetti and for summary judgment. For the reasons stated below, the Court denies both motions.

### Facts

The Court takes the facts from the parties' submissions and views them in the light most favorable to Durpetti.

Menards operates a retail hardware store in Batavia, Illinois. Durpetti was a customer at the store. She had been to the store a dozen times before May 17, 2020 without incident.

On May 17, 2020—not too long after the onset of the COVID-19 pandemic—Durpetti walked into the store wearing her glasses and a facemask.  There is evidence that at the time, the Menards store had a policy of requiring customers and employees to wear facemasks while inside the store.  Durpetti was looking for an outdoor rug and therefore visited the rug department.  She did not find what she was looking for, so she left that department to look for lightbulbs.

As Durpetti was heading towards the electrical department, she entered and walked down one of the store's main aisles.  She was not distracted by her phone or anything else.  At the end of the aisle, Durpetti looked left and turned that way, took two steps, and tripped over an "endcap" display of black rugs on her third step. The aisle and display looked like this:



Durpetti testified that she was not looking at any particular product and that she was looking ahead and to her left as she was turning.  She testified during her deposition

that her facemask might have had something to do with the fall—which a reasonable jury could understand to mean that the store-required facemask somewhat obstructed her downward field of vision. After Durpetti fell, she felt nauseous and has since experienced some physical limitations.

On that day, Efrain Contreras was the store's general manager, and Matthew Napoli was the assistant general manager. Contreras testified during his deposition that the endcap over which Durpetti tripped was used to "display different products, different merchandise that we're just looking to get out in a different area of the department, typically on the main aisle." Contreras Dep. at 21. Contreras testified that the Menards merchandising department produces a monthly listing that indicates what products are to be placed on endcaps, and where. There was no specific guidance on how elevated the rugs should be. The display over which Durpetti tripped was four inches off the floor, and the floormats were about four feet wide. Contreras opined that "I believe that if you're paying attention, that's not something that you're going to trip over or have an incident with." *Id.* at 30. Contreras also testified that the rugs have been "on an endcap through various points in a given year for many years" and that he had "never had anyone trip or fall or have an incident with that endcap with that product." *Id.* Contreras testified that after Durpetti's fall, a shelf and additional mats were added to the endcap rug display.

Durpetti's counsel has retained Albertas Kerelis, a registered Illinois architect, as an expert witness. Kerelis has bachelor's and master's degrees in architecture University of Illinois. Kerelis has taken and continues to take educational courses related to tripping hazards. He has worked on 142 cases involving tripping hazards.

3

On the other hand, he has never designed a big-box store, and this is the first and only case he has worked on involving an injury to someone tripping over an endcap in a retail space. Relying in part upon various industry publications, Kerelis testified that "I really can't state – if anything was negligently constructed. That's a matter for the triers of fact to decide. But it was not constructed in a way that meets the standard of care what other retailers do or what – you know, it definitely constituted a tripping hazard." Kerelis Dep. at 113. Kerelis also testified that "other retailers have stated, and insurers have stated, that these types of endcap displays should be tall. They should be at least three feet high." *Id.* at 113-14.

In Kerelis's report, he opined that the display, which involved a four-inch-tall stack of rugs at the end of a display aisle, was a tripping hazard that was dangerous in a manner that caused Durpetti to fall. He further stated that "[t]he low-lying stack of rugs was dangerous because it was a low obstruction in the walkway that was not readily identifiable by Ms. Durpetti." Kerelis Report at 5. Kerelis also opined that Menards had options that were readily available to eliminate or guard against the tripping hazard. *Id.* at 6.

Durpetti contends that Menards breached its duty of care by negligently placing the stack rugs on the floor at the endcap and by failing to warn customers of the dangerous condition. She also contends that the negligent acts and omissions of Menards were a proximate cause of her injuries.

Menards has moved to bar Kerelis's testimony under Federal Rule of Evidence 702 and has also moved for summary judgment, arguing that the rug display was an open and obvious condition and thus did not present an unreasonable risk of harm.

4

## Discussion

**1.     Motion to bar testimony of plaintiff's expert**

Menards has moved to bar Kerelis from testifying under *Daubert* and Federal Rule of Evidence 702. To be admissible under *Daubert*, an expert's testimony must be helpful to the trier of fact and must "rest[] on a reliable foundation and [be] relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1992). Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In determining whether an expert is qualified, "[t]he question [a court] must ask is not whether an expert witness is qualified in general, but whether his 'qualifications provide a foundation for [him] to answer the specific question.'" *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)). In making this assessment, "a court should consider a proposed expert's full range of practical experience as well as academic or technical training" and "the expert's methodology." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). "Anyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness." *Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000). And "[c]ourts do not necessarily

require an expert witness to possess specialized expertise with an industry or product." *Schuring v. Cottrell, Inc.*, 244 F. Supp. 3d 721, 728 (N.D. Ill. 2017).

Kerelis is sufficiently qualified to render the opinions found in his report. He has a bachelor's and a master's degree in architecture, and he is a registered architect in the State of Illinois and nationally certified as an architect by the National Council of Architectural Registration Boards. Kerelis has also continued to take educational courses related to tripping. He has also worked for clothing retail stores as a professional architect. Kerelis has never designed a big-box retail store, but he has worked on 142 matters involving tripping hazards. The Court finds that he has a sufficient degree of expertise and experience to testify on the subject.

Menards contends that Kerelis is not qualified because he "does not have superior knowledge, skill, experience, or education in relation to the propriety of the rug display or retail industry standards," Def.'s Mem. at 9, and because he has no particular experience with endcaps or the interior design of department stores. The issue, however, is not whether an expert possesses specialized or "superior" expertise, but whether his qualifications provide a foundation that enable him to opine on the subject. *See Schuring*, 244 F. Supp. at 729 (holding that an expert's lack of specialization does not preclude admissibility but may affect the weight of the testimony). Kerelis's claimed lack of specialized knowledge involving endcaps is not fatal to the admissibility of his opinions; this is similar to how, typically, "a physician in general practice is competent to testify about problems that a medical specialist typically treats." *See Gayton*, 593 F.3d at 617. Menards contends that Kerelis's opinions are "mere regurgitations of materials provided to him from his employer." Def.'s Mem. at 9. The Court concludes, however,

6

that Kerelis's extensive experience—including work on over 140 cases involving tripping hazards—and his background sufficiently establish that he has, and is basing his opinions on, relevant and sufficient "specialized knowledge that the lay person cannot be expected to possess," *United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002), and is not just regurgitating the material provided to him.

The next issue raised by Menards involves the reliability of Kerelis's opinions. In assessing this, the Court must "focus[] on an examination of the expert's methodology. The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact." *Smith*, 215 F.3d at 718. It is clear that an expert's knowledge may be based on experience. *See Walker v. Soo Line R.R.*, 208 F.3d 581, 591 (7th Cir. 2000). In addition, as the advisory committee notes to Rule 702 state, "[i]n certain fields, experience is the predominant, if not the sole, basis for a great deal of reliable expert testimony." *See* Fed. R. Evid. 702, 2000 adv. comm. notes.

Menards argues that Kerelis's opinions are unreliable because they are "not rooted in any objectively verifiable method." Def.'s Mem. at 10. Menards focuses on the fact that Kerelis did not visit any Menards stores in developing his opinions and its contention that he has not explained how his expertise led him to his conclusions. More generally, Menard contends that Kerelis is not relying on a scientific methodology.

Kerelis conceded that he did not visit any Menards stores in developing his opinions. But his report sufficiently explains his methodology. Kerelis reviewed the surveillance video and photographs of the endcap display. In his report, he describes the hazard and addresses how the four-inch-tall stack of rugs placed at the endcap of

7

the display was "a low impediment that was not readily identifiable in the larger distracting environment making the walkway at the end of an aisle in Menards dangerous."  Kerelis Report at 4.  He further explained how the endcap was inconspicuous and dangerous based on of the "Zohar" study—which, he says, has been frequently cited and tested by others—and several other research papers.  In addition to the Zohar study, Kerelis relied upon research reported in North Carolina State University Professor Michael S. Wogalter's *The Handbook of Warnings*; Grocers Insurance's *Safety Tip of the Month* flyers; and William English's *Retail Hazards*.  Hence, Kerelis's opinions are not mere assertions, as Menards claims, but rather are conclusions that have been derived from his knowledge and expertise regarding tripping hazards.

Menards argues that the Court should bar Kerelis's testimony because he did not visit the Batavia Menards store and made no measurements of the scene of Durpetti's fall.  There is no rule, however, that requires an expert to visit the physical scene of the pertinent events.  And in this case, that would have done no good:  Menards altered the endcap later on the day Durpetti tripped, by making the stack of rugs higher and adding a shelf.  That aside, Kerelis's assessment is sufficient, and no visit to the Batavia store was required to render his testimony admissible.  The Court also notes that Kerelis examined endcap displays at the Yorkville Menards store, which had the same or a very similar endcap display as the one over which Durpetti tripped.  The fact that he did not examine the no-longer-existing display at the Batavia store affects only the weight to be given to his testimony, not its admissibility.

The last issue is whether Kerelis's testimony will assist the trier of fact.  Menards argues that Kerelis's testimony is unhelpful because laypersons already know that a rug

8

display like the one at issue may be a tripping hazard. "Expert testimony is helpful to the jury if it concerns a matter beyond the understanding of the average person." *Davis v. Duran*, 276 F.R.D. 227, 231 (N.D. Ill. 2011). "[A] witness should not be allowed to put an 'expert gloss' on a conclusion that the jurors should draw themselves." *United States v. Christian*, 673 F.3d 702, 710 (7th Cir. 2012).

Menards argues that jurors have had experiences shopping at big-box retail stores and know that endcaps with rugs displays are an obvious tripping hazard. It relies on *Pickens v. Wal-Mart Stores East, LP*, 2015 U.S. Dist. LEXIS 110095 (N.D. Ill. Aug. 20, 2015), in which the court ruled that because "the facts in [the] case are not complicated . . . [the expert's testimony] could actually confuse the jury unnecessarily." *Id.* at *6. In *Pickens*, however, the plaintiff had seen the subject display before her fall. In this case, Durpetti says she did not see the endcap display as she was turning the corner at the apparent end of the aisle. Unlike the expert in *Pickens*, Kerelis's testimony will assist the jury by providing a better understanding of the perception, expectations, and cone of vision of a reasonable customer walking down the aisle and turning the corner. The Court also notes that two defense witnesses, store manager Contreras and assistant manager Napoli, testified that in their view, the endcap display did not create a hazard for customers. Irrespective of the admissibility of this testimony—a subject the Court does not here address—it illustrates that it may not be as obvious to laypersons as Menards contends that the display might pose a hazard.

For these reasons, the Court overrules the request to bar Kerelis's testimony.

**2. Motion for summary judgment**

To succeed on its motion for summary judgment, Menards must show that "there is no genuine dispute regarding any material fact and that [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding the motion, the Court must "construe all facts and inferences arising from them in favor of the party against whom the motion under consideration is made"—in this case Durpetti. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017). A genuine issue of material fact exists where a reasonable jury could return a verdict in favor of the nonmoving party. *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014).[1]

An Illinois landowner owes business invitees a duty of care to keep its premises reasonably safe. *Piotrowski v. Menard, Inc.*, 842 F.3d 1035, 1038 (7th Cir. 2016). Illinois courts consider four factors when deciding if a duty of care exists: (1) the reasonable foreseeability of the harm; (2) the likelihood of the injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing that burden on the premises owner. *Dunn v. Menard, Inc.*, 880 F.3d 899, 906 (7th Cir. 2018).

Menards contends that the condition challenged by Durpetti was open and obvious and that it therefore owed Durpetti no duty of care. This contention "implicates the first two factors of the duty of care analysis." *Id*. In an appropriate case, "[t]he open

---

[1] Menards argues that the Court should disregard Durpetti's response because she exceeded by five pages the fifteen-page limit for briefs established in N.D. Ill. Local Rule 7.1. The Court declines to do so. Menards also says that the Court should disregard any facts set out in Durpetti's response because she contravened Local Rule 56.1(b)(3) by including additional evidentiary material into her response brief, rather than in a separate statement of material facts. But a court has discretion on "whether to apply the rule strictly or to overlook any transgression." *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995). The Court does the latter here. Neither infraction unfairly prejudiced Menards.

and obvious nature of the condition itself gives caution and therefore the risk of harm is considered slight; people are expected to appreciate and avoid obvious risks." *Bucheleres v. Chicago Park Dist.*, 171 Ill. 2d 435, 448, 665 N.E.3d 826, 832 (1996); see *McCarty v. Menard, Inc.*, 927 F.3d 468, 471 (7th Cir. 2019). To put it another way, "persons who own, occupy, or control and maintain land are not ordinarily required to foresee and protect against injuries from potentially dangerous conditions that are open and obvious." *Bucheleres,* 171 Ill. 2d at 447-48, 665 N.E.2d at 832. See also, *Dunn v. Menard, Inc.*, 880 F.3d 899, 906 (7th Cir. 2018).

In this case there is a genuine factual dispute over whether the rug display was open and obvious. Menards contends that any danger posed by the rug display was readily apparent to a reasonable customer. It relies on, among other things, Durpetti's testimony to the effect that if had she looked down and seen the rug display, she would have avoided it. But this argument basically assumes Menards' conclusion. Part of the point is that it's not apparent that one would expect a reasonable customer to look down while turning at what was, from all appearances, the end of an aisle. This is so even if one sets aside the fact that in May 2020, a reasonable customer's downward gaze might be somewhat obstructed by a protective facemask that the store required all customers to wear.

It is true, as Menards contends, that "the determination of whether the condition is open and obvious depends not on [a] plaintiff's subjective knowledge, but rather, on the objective knowledge of a reasonable person confronted with the same condition." *Dunn*, 880 F.3d at 906. Here, however, Durpetti relies not (or not just) on the fact that she didn't look down, but on the proposition that a factfinder could determine that a

11

reasonable customer would not be expected to do so or otherwise would not perceive the hazard given the circumstances. The Court concludes that the application of the open-and-obvious test involves genuinely disputed facts, making it an inappropriate basis for summary judgment.

Though the Court reaches this conclusion even without considering the testimony of Durpetti's expert witness Kerelis, his testimony provides a further basis for denial of summary judgment. Among other things, Kerelis opined that the rug display was a low obstruction that was not readily identifiable by a reasonable customer. This provides further support for Durpetti's claim of negligence.

Because application of the open-and-obvious test is the only basis upon which Menards seeks summary judgment, the Court denies its motion.

## Conclusion

For the reasons stated above, the Court denies defendant's motion for summary judgment [35] as well as its motion to bar plaintiff's expert Kerelis contained in that motion. At the telephonic status hearing on August 3, 2023, counsel should be prepared to set a trial date in the fall of this year and to discuss the possibility of settlement.

Date: July 30, 2023

_____
MATTHEW F. KENNELLY
United States District Judge